UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | Crim. No. 19-CR-215 (RJL) |
| : | |
| v. : | |
| : | |
| NATHANIEL DIGSBY, : | |
| : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its request that the Defendant before the Court be detained pending trial.

**Introduction**

The Defendant is charged by way of indictment with engaging in a long-term heroin trafficking conspiracy lasting from July 1, 2019 through June 1, 2019 within the District of Columbia and elsewhere. Defendant is charged with conspiring to traffic over 100 grams of heroin as part of this conspiracy, a charge that carries a mandatory sentence of at least five years of incarceration. In reality, Defendant Digsby faces a mandatory sentence of at least ten years of incarceration due to his prior drug trafficking conviction.

Defendant's charges are based on Defendant Digsby selling heroin in large quantities to a confidential informant ("CW-1") on video tape and on audio recordings. In total, Defendant Digsby sold heroin or Percocet to CW-1 on eleven separate occasions. The relevant dates and

1

amounts are listed below.

| Drug Sale by Defendant Digsby | Date | Amount |
|---|---|---|
| 1 | July 18, 2018 | 2 grams heroin |
| 1 | July 18, 2018 | 10 Percocet pills |
| 2 | July 31, 2018 | 6.5 grams heroin |
| 3 | August 7, 2018 | 10 grams heroin |
| 4 | August 15, 2018 | 15 grams heroin |
| 5 | August 21, 2018 | 14 grams heroin |
| 6 | August 30, 2018 | 21 grams heroin |
| 7 | September 12, 2018 | 32 grams heroin |
| 8 | October 3, 2018 | 20 grams heroin |
| 9 | October 17, 2018 | 20 grams heroin |
| 10 | November 2, 2018 | 10 grams heroin |
| 11 | November 5, 2018 | 10 grams heroin |

The charges are additionally based on wire and electronic interceptions of Defendant Digsby talking about heroin sales and purchases with both his heroin customers and heroin suppliers. The FBI obtained an order to intercept wire and electronic communications to and from Digby's phone from in or around November 7, 2018 and continuing through in or around December 6, 2018. Law enforcement listened to Defendant Digsby arrange heroin sales and discuss quantities and prices with customers. Law enforcement also heard Defendant Digsby discuss prices and heroin quantities with his heroin supplier based in Maryland.

Law enforcement executed a search warrant at Digsby's Maryland home on June 27, 2019 and they recovered an additional half-ounce of heroin, evidencing his continued involvement in heroin sales.

## **Applicable Law**

Here, the Government has requested a pretrial detention hearing under a provision of the

Bail Reform Act, 18 U.S.C. § 3142(f)(1), which provides that a judicial officer "shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community" upon motion for a case that involves "(C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. §§ 3142(f)(1)(C). The Controlled Substance offenses charged here meet these criteria.

When considering the "safety of any other person and the community" justifications for pretrial detention, the common sense reasons for both the Bail Reform Act and the statutory presumption's treatment of serious drug trafficking offenses, as charged in Counts 1 through 9 of the Indictment, should be kept in mind. Under the Bail Reform Act, 18 U.S.C. §§ 3142 *et seq.*, "[t]he statutory language, as well as the legislative history, unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985). Its legislative history also "fully supports the conclusion that Congress intended to equate drug trafficking with danger to the community." *Id.* at 507. As noted by the D.C. Circuit:

> The legislative history indicates that the rebuttable presumption covering serious drug trafficking offenses was included because:
>
> Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism. Furthermore, the Committee received testimony that flight to avoid prosecution is particularly high among persons charged with major drug offenses. Because of the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and the foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable

by lengthy prison sentences.

*United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S. Code Cong. & Admin. News 1984, p. 3203). Thus, in creating a presumption of pretrial detention for serious drug trafficking offenses, both the legislative history and the statutory language make clear that very "real-world" concerns lie behind the recognition of the inherent, pretrial dangers and flight risks posed by those who commit serious drug trafficking offenses.

To be sure, that presumption is rebuttable and does not shift the ultimate burden of proof from the Government's shoulders. But it does create a burden of *production* on the defense to submit at least some credible evidence that might purport to overcome it. Even if the defense does submit such evidence, the presumption remains as a factor that may be considered by the Court amongst others in determining whether the Defendant should be detained, and the presumption retains "evidentiary weight." *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a Defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight") (citations omitted); *United States v. Rueben*, 974 F.2d. 580, 586 (5th Cir. 1992) (the mere production of evidence [regarding flight risk for a drug offense] does not completely rebut the presumption . . . . In making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society" (citation omitted); *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("Although the government retains the burden of persuasion, a Defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption . . . . Once a Defendant introduces rebuttal

evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant. . . . *see also United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir.1985) (rejecting "bursting bubble" approach)" (internal citation omitted)); *see also United States v. Ali*, 793 F. Supp. 2d 386, 388 and 388 n.2 (D.D.C. 2011) ("Even if such contrary evidence or credible proffers are offered, the presumption remains as a factor to be considered by the Court amongst others in determining whether the Defendant should be detained").

In making a pretrial detention decision, by statute a judicial officer must consider four factors:  1) the nature and circumstances of the offense charged, including whether the offense involves such things as the use of a firearm; 2) the weight of the evidence against the person; 3) the history and characteristics of the person; and 4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

<u>Nature and Circumstances</u>

The nature and circumstances of the crimes charged weigh in favor of detention. The Defendant engaged in a long-term drug trafficking conspiracy. He sold over 160 grams of heroin to CW-1. Digsby discussed additional drug sales during many of these controlled transactions. For example, when setting up a 20 grams heroin sale on August 30, 2018, Digsby was asked if he could "handle 20 [grams]." Digsby responded without hesitation that he could "handle 200 [grams] if that's what [CW-1] wanted."

During an October 3, 2018 heroin sale, Digsby told the CW that after Digsby finished selling CW-1 20 grams of heroin, he (Digsby) was off to sell another customer an additional 50 grams of heroin.

Recorded Phone Calls Arranging a Heroin Sale

| | |
|---|---|
| DIGSBY: | GM what's up I got the work assignments with me |
| CW-1: | Cool I'll call u n a few |

| | |
|---|---|
| CW-1: | I got to meet at your house because I got to break it down a little bit. |
| DIGSBY: | Ok. |
| CW-1: | Only can probably get like 20 of them, so I'll meet you at the house |
| DIGSBY: | Ok. |

Recorded Conversation During Sale

| | |
|---|---|
| CW-1: | You gotta break that joint down for me man. |
| DIGSBY: | It's 10 and 10. |
| CW-1: | You got 10 and 10? Because that's what I need, 20 then, you already there then. |
| DIGSBY: | You can take them out from the scale. |

| | |
|---|---|
| CW-1: | You getting ready to see somebody else too? |
| DIGSBY: | Umm hmm |
| CW-1: | How much? |
| DIGSBY: | 50 |

This is a limited review of the recordings capturing Defendant Digsby openly discussing heroin sales and admitting to selling even more heroin aside from the sales to the CW. Digsby repeatedly referred to heroin in coded language with his suppliers and customers, calling heroin "contracts," "cabaret tickets," and "drapes." These serious offenses pose a significant danger to the community.

Weight of the Evidence

The evidence against Defendant Digsby is overwhelming. Video and audio recordings capture Digsby arranging heroin sales and personally selling heroin on multiple occasions. FBI agents surveilled the meetings, photographing Digsby meeting with the CW to sell heroin in mall parking lots, public golf courses, and Defendant Digsby's home.

Law enforcement obtained an order to intercept wire and electronic communication to and from Digsby's phone over a 30-day period. They were able to identify many of Digsby's heroin customers and one of Digsby's heroin suppliers. Law enforcement also obtained an order to intercept wire and electronic communications to and from Digsby's supplier, and in that process, they intercepted Digsby ordering drugs from his supplier and discussing processing heroin and resupplies of heroin for sale.

Finally, on the date of Digsby's arrest, he possessed an additional half-ounce of heroin for resale.[1]

History and Characteristics of the Defendant

The Defendant's criminal history shows that he is a clear danger to the community. In 2012, he served a five-year sentence for Distribution of Heroin and Possession with the Intent to Distribute Heroin. In 2005, he served 180 days in jail for Possession with the Intent to Distribute Marijuana. In 1998, he was convicted of Unlawful Possession of a Firearm by a Convicted Felon. In 1988, he was sentenced to eight years of incarceration with four years suspended, for Possession with the Intent to Distribute Heroin. Additional cases are listed in the Defendant's bail report, but the dispositions are yet to be confirmed.

---

1 Defendant Digsby's drug test upon arrest show that he is not a drug user.

Defendant's history as a convicted heroin trafficker certainly weigh in favor of pre-trial detention.

Nature and Seriousness of the Danger to any Person or the Community

The Defendant has shown this Court his continued involvement in heroin trafficking, dating back to his first conviction in 1989 and lasting all the way up until his arrest last week with a half-ounce of heroin for resale. The Defendant's drug trafficking crimes pose a serious danger to the community. This factor again favors pre-trial confinement.

**WHEREFORE**, we respectfully request that the Court order that the defendant be held pending trial in this matter.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY

　/s/
KEVIN L. ROSENBERG
Assistant United States Attorney
Ohio Bar 0081448
555 4th Street, N.W.
Room 4124
Washington, D.C.   20530
(202) 252-7833